UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| FITZGERALD TRUCK PARTS AND SALES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 23-50238<br>Honorable Terrence G. Berg<br>Magistrate Judge Elizabeth A. Stafford |

**OPINION AND ORDER DENYING MOTION TO COMPEL SUBPOENA COMPLIANCE (ECF NO. 1)**

**A.**

Fitzgerald Truck Parts and Sales, LLC, sues the United States of America in the Middle District of Tennessee (Case No. 20-CV-00026) to recover federal excise taxes that the IRS collected, and the government asserts a counterclaim "to recover hundreds of millions of dollars in excise taxes, penalties and interest that it contends that Fitzgerald owes." ECF No. 1, PageID.1,12. Fitzgerald served a subpoena on Detroit Diesel Corporation (DDC) to which DDC objected, prompting Fitzgerald to move to compel in this district. ECF No. 1; ECF No. 1-6. The Honorable Terrence G. Berg referred the motion to the undersigned for hearing and

determination under 28 U.S.C. § 636(b)(1)(A).  ECF No. 3.  The Court denies the motion.

**B.**

The United States imposes an excise tax on heavy trucks, trailers, and tractors "on the first retail sale" of those "articles."  26 U.S.C. § 4051(a)(1).  Fitzgerald says that it sold 12,000 refurbished tractors called "gliders," which are ordinarily articles subject to the § 4051(a)(1) excise tax.  ECF No. 1, PageID.14-15.  But Fitzgerald asserts that those refurbished gliders fall within a "safe harbor" provision for articles that have been repaired or modified "if the cost of such repairs or modifications does not exceed 75 percent of the retail price of a comparable new article."  26 U.S.C. § 4052(f)(1).

According to Fitzgerald, the United States claims "that Fitzgerald must show where each engine came from…[and] that the applicable federal highway excise tax was paid previously."  ECF No. 1, PageID.13.  Fitzgerald asserts that the wrecked engines it has used for its gliders "were generally not accompanied with certificates of title, warranty or service history, or prior owner information."  *Id*., PageID.12.  And it claims that DDC manufactured the engines in its gliders, which is why it served DDC with a

2

subpoena for this information about 12,000 engines manufactured between 2012 and 2017:

> a. The engine series and model for each engine;
> b. The build, shipping and placed in service dates for each engine/tractor;
> c. The name, address, phone number and email address of the customer for each engine/tractor;
> d. All warranty data for the engine/tractor;
> e. The highway tractor series and model, and any other identifying information (such as a serial number or other vehicle identification number) for each tractor into which each engine was installed;
> f. The build and in service dates for each tractor into which an engine was installed;
> g. The customer name and address for each such tractor;
> h. If an engine/tractor was not the first utilization of the engine in a new tractor, but rather a replacement engine for a used tractor, then please specifically identify that fact for any serial number(s), including to whom the engine was sold (including the purchaser's address) and the date of the sale.

ECF No. 1-6, PageID.158.

DDC objected to the subpoena:

> As a preliminary matter, the subpoena, on its face, is overly broad and unduly burdensome. The subpoena attaches a 44-page document containing nearly twelve thousand engine serial numbers of which Plaintiff seeks detailed and specific information regarding each. The nearly twelve thousand engine serial numbers encompass approximately five years' worth of information. Additionally, part of the information sought includes individual customer information, including customer name, address, phone number, and email address, for the nearly twelve thousand engine serial numbers. The massive scope of this request would cover thousands of documents over many years. Searching for this information and producing all of these

3

> documents would require substantial time and expense from DDC, an uninterested third-party to this lawsuit. The information requested is simply not proportional to the needs of the case and represents an overly broad and unduly burdensome request, especially on a non-party.
>
> Equally important is the fact that both Plaintiff and DDC sell engines and drivetrains to the public. Consequently, Plaintiff is a direct competitor of DDC who is seeking confidential and proprietary information and trade secrets relating to DDC's manufacture and sale of engines, dates of sales, and the identities of its customers between 2012 and 2017. Therefore, not only is this request overly broad, unduly burdensome, and would subject DDC to significant expense, but it also seeks information that would give DDC's competitor its confidential trade secrets. Furthermore, such broad and unilateral disclosure of the sought-after information, including customer information, cannot be cured by a protective order since such information invokes serious antitrust concerns and invites potential anti-competitive harm.

*Id.*, PageID.159.

## C.

The scope of discovery for a subpoena under Rule 45 is the same as under Federal Rule of Civil Procedure 26(b)(1). *State Farm Mut. Auto. Ins. Co. v. Elite Health Centers, Inc.*, 364 F. Supp. 3d 758, 767 (E.D. Mich. 2018). Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," except that the Court must consider proportionality factors, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources,

the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

Along with having to request discovery within the scope of Rule 26(b)(1), a party serving a subpoena on a nonparty must "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Rule 45(d)(1). Courts are required to enforce that duty and must quash or modify a subpoena that would subject the nonparty to undue burden. Rule 45(d)(1) & (d)(3)(iv).

In its motion to compel and reply brief, Fitzgerald neither mentions its duty to take reasonable steps to avoid imposing an undue burden or expense on DDC, nor argues that it took any steps to fulfill that duty. ECF No. 1; ECF No. 6. Rather, Fitzgerald treats its motion to compel as if it requested documents under Federal Rule of Civil Procedure 34 from a party in the Tennessee action rather than from a nonparty under Rule 45. ECF No. 1, PageID.19-21. DDC's nonparty status matters. "Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure." *In re CareSource Mgmt. Grp. Co.*, 289 F.R.D. 251, 253 (S.D. Ohio 2013) (cleaned up); *see*

also *Fusion Elite All Stars v. Varsity Brands, LLC*, 340 F.R.D. 255, 261 (W.D. Tenn. 2022) (same).

To determine whether a subpoena unduly burdens a nonparty, the Court must consider "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *In re CareSource Mgmt.*, 289 F.R.D. at 253 (cleaned up). Applying those factors, the Court finds that compelling DDC to produce the breadth of documents described in the subpoena would impose an undue burden.

## D.

Fitzgerald claims that the documents it seeks from DDC are "highly relevant" to the taxability issue because they will resolve "whether the excise tax was paid on the first retail sale of the highway tractors that the Detroit Diesel engines were originally installed in." ECF No. 1, PageID.21. But Fitzgerald does not request documents that directly reveal whether excise taxes were already paid on the engines. ECF No. 1-6, PageID.158. Fitzgerald instead requests many categories of data that it presumably believes would help it trace the engine's tax history. Yet Fitzgerald fails to explain how the specific data described in the subpoena would help it

6

discover the tax history for the engines. For example, how would the engines' warranty data be useful for tracing the tax history? *Id.*

Fitzgerald also fails to show the need for the broad range of documents described in the subpoena or that the burden on DDC in producing the requested documents would be warranted. Why does need data from all eight of the specified categories of documents to trace the engines' tax excise tax history?

Then there is the question of whether Fitzgerald has documentation about the engines' excise tax history. Fitzgerald claims that it does not have the title to most of the salvaged tractors it used and that the titles it does have include no information about the engines. ECF No. 6, PageID.378. It claims that DDC has exclusive access to information about the engines. ECF No. 1, PageID.26-27. But DDC points to documents showing that Fitzgerald has made contradictory representations in official documents.

In an appeal letter to the IRS in 2015 about tax periods 2012 to 2014, Fitzgerald said that it "retains a copy of the originally taxed donor tractor's title in its files" and that it "ensure[d] that the Section 4051 excise tax previously had been paid on each of the donor tractors when they were originally sold in retail transactions." ECF No. 5-1, PageID.343-344. It said

7

that it provided an examining agent access to all files kept for refurbished tractors, and that "[e]ach file include[d] the information evidencing that the donor tractor had been previously taxed, along with a plethora of other documents, including the donor tractor's prior title." *Id*., PageID.344.  The appeal letter is part of the record in the Tennessee action.  *Id.*

DDC also cites a document entitled Claim for Refund and Request for Abatement that is included in the record of a 2019 action Fitzgerald filed against the government.  ECF No. 5, PageID.324; ECF No. 5-2, PageID.367.  The Claim said, "It is undisputed that every one of the donor tractors that Taxpayer acquires and repairs was previously subjected to the excise tax under section 4051(a) of the Internal Revenue Code, as evidenced by Taxpayer's records."  ECF No. 5-2, PageID.367.  In reply, Fitzgerald does not explain the discrepancy between the claims in earlier official documents and its claim here that it has no information about whether excise taxes were paid by the original owners.  ECF No. 6.

The parties disagree about how long it would take for DDC to collect the requested documents.  DDC states that collecting the data would take thousands of manhours over many months.  ECF No. 5, PageID.327-330; ECF No. 5-3, PageID.370-371.  Fitzgerald counters that it would take less than a minute to access the information about each of the engines.  ECF

No. 6, PageID.378; ECF No. 6-8.  In any event, the Court may rely on its common sense to find that inputting 12,000 engine serial numbers into one or more databases, and converting the accessed data into producible form, would be a time-consuming endeavor.  *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 744 (8th Cir. 2018) (finding that a court may rely on its common sense to find that discovery requests are overbroad and unreasonable).

The Court rejects Fitzgerald's accusation that DDC made boilerplate objections to the document requests.  DDC explained that Fitzgerald's request for detailed and specific information for 12,000 engine "would cover thousands of documents over many years," and that searching and producing the information "would require substantial time and expense from DDC, an uninterested third-party to this lawsuit."  ECF No. 1-6, PageID.158.  Fitzgerald could have then tried to redraft its requests to reduce the burden and expense on DDC.

Fitzgerald instead moved to compel with a brief that focused mainly on DDC's allegedly deficient objections.  ECF No. 1.  In this way, Fitzgerald "put[ ] the cart before the horse," as it had the initial burden of showing that the specific requests were relevant to the claims or defenses in the Tennessee case.  *Ozark Int. v. Arch Ins. Co.*, No. 22-51460, 2023 WL 2264462, at *1 (E.D. Mich. Feb. 28, 2023).  And it had the initial duty to

9

take reasonable steps to avoid imposing an undue burden or expense. Rule 45(d)(1).  Because of Fitzgerald's deficient showings of relevance and reasonable steps to avoid an undue burden or expense, its motion to compel would lack merit even if DDC's objections were boilerplate.

The Court thus **DENIES** Fitzgerald's motion to compel, ECF No. 1.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: April 5, 2023

## NOTICE TO PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this order, any party may file objections with the assigned district judge.  Fed. R. Civ. P. 72(a).  The district judge may sustain an objection only if the order is clearly erroneous or contrary to law.  28 U.S.C. § 636.  **"When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in full force and effect unless and until it is stayed by the magistrate judge or a district judge."**  E.D. Mich. LR 72.2.

## **CERTIFICATE OF SERVICE**

    The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 5, 2023.

                                        <u>s/Marlena Williams</u>
                                        MARLENA WILLIAMS
                                        Case Manager